Morning Council, we are here for oral argument in case number 18-2856L v. City of Pittsburgh. We're doing a telephonic argument. We will start one note about telephonic oral argument. We don't have the typical red light, yellow light, green light that we have when it's in person. Instead, I'll be taping time with the help of my smartphone, which I will set, and there will be a chime that goes off in the background. I've entitled that chime circuit, so it's kind of a seemed appropriate title, but it's also a little distinct. So if you hear something going off in the background, that means you're at your time, and you can finish your thought or address any follow-up questions by panel members. With that, Ms. Koren, the floor is yours. Thank you, Your Honor. My name is Julie Koren, and I represent the defendants, Lt. Rene Casuda, Officer Frank Welling, and Officer Frank Warnock. I'm requesting three minutes of time for rebuttal. Okay. That's granted. Thank you. The claims I appeal here include one count between Will L. and Lt. Casuda for a 1983 failure to intervene, a 1983 excessive force claim between Will L. against Officer Welling, and one additional state law claim between Bashad L. and Officer Warnock. There's no particular claims against the city. Those are already disposed of. No claims for an illegal stop or prolonged stop. First, I would just like to touch briefly on the issue of jurisdiction. In accordance with the court's order of September 11, 2019, we were instructed to just include our arguments on the propriety of the appeal in our brief. According to 28 United States Code 1291, interlocutory review of certain collateral orders, like qualified immunity, are proper. Qualified immunity would essentially be lost if an interlocutory appeal like this was not permitted whenever the rights or whenever the issues were a matter of law like they are in this case. We are asking the courts to examine the district court's definition of the alleged right at issue, which is a matter of law, and determine whether or not the district court found properly that the alleged right at issue was clearly defined. Those are both issues of law relating to qualified immunity. I would submit that this is a proper appeal. I would just move on to what our argument is on appeal. Qualified immunity is a two-pronged inquiry. When a court has to resolve questions of qualified immunity, they ask two questions. Whether the plaintiff alleged a violation of a constitutional right, and whether the right was clearly established at the time of the official's conduct. The court can answer these two prongs in any order that it believes most appropriate for the case. Part of what the court has to do to conduct this inquiry is to define the alleged right at issue. When a court goes about this exercise, they have to observe that the alleged right at issue must be particularized to the facts of the case. Which aspect are you talking about now, the excessive force claim or the failure to intervene? This would be for both of the claims. This is just in general when it comes to assessing the defense of qualified immunity. Let's get specific then about the excessive force claim. You don't really deal with the Graham or Sharar factors in your brief. But aren't they the touchstone for this type of situation with respect to the excessive force claim? And figuring out whether there was danger to the officer, whether the people were being threatening or whatever. Don't we have clearly established law as to what would constitute excessive? In a way, when it comes to qualified immunity assessments, those are almost two different questions. The Graham factor is yes. Whenever there is a claim for excessive force or failure to intervene in excessive force, those factors are going to be factually overlapping and incorporated into a qualified immunity assessment. But before considering how those factors intertwine with the first prong of the question, which is whether the plaintiff alleged a violation of a constitutional right for excessive force or failure to intervene, the specific facts and the right at issue have to be defined. And that's the only way that we can determine whether the right at issue was clearly established in the context of an excessive force claim. All right. So how do you define it such that you say it was not clearly established? I'm sorry. Could you repeat the question? Thank you. So how would you set forth the question of law such that it was not clearly established with respect to the excessive force claim? With respect to the excessive force claim between Will L. and Officer Welling, in that particular case, I believe that what the district court should have incorporated were the facts that really can't be disputed in the case, which are the facts that Mr. L. was convicted of disorderly conduct. So what we have for Mr. Welling is we have that the district court defined the right at issue as an individual. That may be a fact, but don't we look at the scene under the Graham factors? We look at what was happening and define the right vis-à-vis that? Yes, that's exactly what we do, which is why his conviction has to be incorporated into the right at issue. But we don't know that that was before this occurred. The disorderly conduct could be the entire scheme, but the specific fact here is the striking once he moved forward towards Welling. Isn't that the specific fact we need to look at? It's one of the specific facts we need to look at, yes. We would be looking at the facts from the first initial contact between Lieutenant Kasuda and all of the interactions leading up to the contact between Officer Welling and Mr. Will L. All of those would be considered. Let me interject here. Part of my difficulty in dealing with your appeal, and I'm going to limit this question to the excessive force claim against Welling just for a moment. Part of my problem is the question of what we have jurisdiction to review and what we don't have jurisdiction to review. Do we really have jurisdiction? Do we have jurisdiction to consider Officer Welling's argument that Will's behavior was not necessarily non-threatening? Because that's what Judge Norbert Fisher concluded, was that his conduct in getting up and stepping towards the two officers was non-threatening. If we don't have jurisdiction to review that, I think that very much limits the scope of what is properly before us on the question of qualified immunity versus Officer Welling. Could you respond to that question? Yes, you absolutely have jurisdiction to examine both the question of the way the right was – alleged right at issue was framed and whether the right was clearly established. In S.F.B. Mackey, which is a Third Circuit case from 2006 – That wasn't Judge Fisher's question. Judge Fisher's question was specifically with respect to Judge Fisher's finding that the conduct was non-threatening. Let's say that even if that was something that you were not allowed or permitted to have jurisdiction over, what you do have jurisdiction over is to examine whether the right at issue was clearly established. Okay, yes, but if we don't – okay, okay, go ahead. And yes, even if there is some dispute of, I guess, a fact relating to his specific behavior and whether disorderly conduct constitutes threatening or non-threatening, the case law still allows for you to examine the legal question of whether or not it was clearly established. So even if we take the right at issue with particular – Doesn't that get you – and Counsel, the problem with this telephonic is there's sometimes a talk-over, and I'm not attempting to do that. It's just the technology we're faced with here. Doesn't that then get you to the factors, the Graham factors, the Graham-Schar factors, that Judge Rendell was referencing earlier? And doesn't it require you to define the right at issue when someone who is non-threatening and does not pose an imminent threat to the safety of the police have a right not to have that non-threatening behavior met with something other than, you know, force striking in this way? Isn't that the way we would have to describe the right at issue? I think that – I disagree and think that when we're looking at the Graham factors, one of the factors that has to be considered is the fact that he was committing disorderly conduct, which is defined as creating a hazardous condition. So if the question is about the Graham factors and how we're factoring those in, it's not just looking at the factors of whether or not someone would describe as non-threatening, what we can actually nail down from the record. And the one thing that we can nail down is that he was committing disorderly conduct. So that would just need to be – Well, let me interrupt there because I think Judge Rendell asked you a really, really tight and targeted question, which was, yes, he does have a disorderly conduct conviction, but we don't know, you know, from what specific component of this interaction that conviction flows. And what we do know, though, in contrast, is that this case hinges, this excessive force case hinges on a matter of about three seconds before Officer Welling more or less tackled L. And so, you know, saying that it was all disorderly conduct is one thing, but don't you have to really show that in that three seconds or so that there was no clearly established right? Yes. Well, the plaintiff has to show that there was a clearly established right in that three seconds. Well, and you're the one seeking qualified immunity, so I assume that you're showing you would bear the burden of establishing the immunity, which would mean you'd have to show that it wasn't clearly established. Let me ask you a question about the difference between – you know, I mean, it seems that a lot of this comes down to how we define the clearly established right. And one of the key phrases in this description is the phrase non-threatening. But in reality, it strikes me that threatening and non-threatening isn't necessarily binary. There can be conduct that's clearly non-threatening. There can be conduct that's clearly threatening. And then there can be kind of conduct in the middle that might require a heightened awareness or some degree. You don't know if it's threatening yet, but you don't necessarily view it as non-threatening either. So, I mean, do you view – I guess as I view the case, I'm wondering, do you view threatening and non-threatening as binary, or is there a middle ground there? No, I agree with you that there is a middle ground on that particular issue. And to discuss the matter of whether or not this is clearly established is very intertwined with the way we define the issue. And in this particular case, the cases that the court relied on, many of them are not proper to establish that the right was clearly established. Ms. Corn, let me ask you this question when we're on this point. Does the district court's definition of the right, which calls Will's one or two small steps non-threatening, does it necessarily undermine the disorderly conduct conviction? Well, the disorderly conduct conviction, one of the elements is that there is a hazardous condition or physically offensive condition. And so, yes, I think that that could undermine and go into the Hexie Humphrey territory of causing an inconsistent liability with – compared to the criminal conviction that hasn't been overcharged yet. Okay. Thank you very much. We'll invite you back up for rebuttal. Thank you. Mr. Hollis, I understand that you will be arguing for a tally. Good morning, judges. My name is Attorney Todd Hollis. I represent the appellee respondents in this matter, both Will and Beyshotel. And, you know, listening to the arguments of counsel, I don't think that she has a very clear understanding as to what qualified immunity is. Qualified immunity, you know, exists to protect police officers who are encountered with unusual circumstances. So when a police officer has interactions with the public on a daily basis, they may, in fact, be confronted with issues of which they're not familiar with. And, therefore, we seek to protect our police officers when they do things that are reasonable that could potentially affect someone's rights. But in this instance, I think it could be hardly said that choking, slamming, punching somebody to the ground, or otherwise, you know, harming someone who has not presented a threat could hardly be a new or unique challenge to a police officer, particularly the city of Pittsburgh police who are presently under a consent decree. Counselor, what do we do with the district court's determination that Will was acting in a non-threatening manner? Are we free to overturn that, to disregard that? How must we view that? You must view that as a fact, at least a fact that is at issue with respect to the position that the appellants have versus the appellees. I understand that in the analysis of qualified immunity, there are instances where both law and facts are intertwined, where you must answer certain facts to be able to determine if, in fact, there was a violation of, you know, the plaintiff's Fourth Amendment rights in the examples that we're dealing with here, i.e., failure to intervene, i.e., excessive force as it relates to the defendant appellants. But issues of fact should not be overturned or cannot be set aside. Those questions must be answered by a jury. And I believe that that is what Judge Fischer did when she said that, you know, a reasonable jury could conclude, you know, that someone who is non-threatening, you know, Officer Welling, who has a cigarette in his hand, who may have taken one or two steps but in a non-threatening manner, a reasonable jury could conclude that Welling's actions of grabbing him by the wrist, putting his arm, his hands around his neck, and pushing him up against the wall, forcefully pushing him up against the wall, could, in fact, violate his Fourth Amendment rights. Those questions must be answered. Let me just pick up on that point. If I understand what you're saying, your argument is going really to a jurisdictional point, if I understand it. What you're basically saying is rather than take all of the facts as either undisputed or in the light most favorable to your client, especially on this threatening, non-threatening, potentially ambiguously threatening distinction, what you're saying is, well, that's a question for a jury. And so because there's different outcomes there, because if it was threatening, maybe the conduct would qualify as qualified immunity. If it was non-threatening, it might not qualify as qualified immunity. If it's in the middle, maybe we don't know. But in essence, what you're saying is because sometimes it's clearly established and sometimes it's not, the only way we can find out if it is or isn't is to resolve a fact. And that's not our job if that fact could be disputed and excessive force claims are typically left in the purview of a jury, not a judge. Is that right? Exactly. Exactly. Not just immaterial facts such as whether the person had a red or a blue shirt on, but material facts as to whether this person's conduct as he stood there rose to the level of some kind of Because if the jury were to discern that there was no threatening posture on Will L's behalf, then obviously what Officer Welling did would in fact violate his rights. That's not what this court should be in a position to do. The facts are a paradigm of the jury. Well, the point of that is that if the facts taken in the light most favorable to the injured party, if there are facts which taken in that light could bring about a lack of right on the part of the officer, then we can't grant qualified immunity. Isn't that correct? That's also correct, Your Honor. So regardless of whatever way that you look at it, if you discern the facts in the light most favorable to the non-moving party, which would be the appellants, then that fact is that Will L did not present a threat to Officer Welling, and in that regard the appellants are not entitled to some way of judgment. Okay. Sorry, are you confused? The rights, I mean, is the Third Circuit any different than any other circuit? I mean, does the Third Circuit allow police officers to randomly harass, bully, threaten unarmed individuals who aren't presenting a threat? Would the City of Pittsburgh police not know that in 2020? I mean, it's really disingenuous. Well, let me ask a question. I'd like, Mr. Hollis, in looking at your brief, you seem to argue that Will's right to be free from force was established by the excessive force factors. But that's not what the district court held. It said that the right was clearly established by the consensus of persuasive authority from other circuits. So are you arguing that the district court took the wrong approach, or are you arguing that we should affirm on an alternate ground? I'm sorry, I didn't understand your question. Could you repeat it, please? Well, your brief. You've been cut off from me. I'm sorry. All right, I apologize for the technology. You argue that Will's right to be free from force, used by Officer Welling, was established by the excessive force factors. That's what your brief says. But that's not what the district court held. The district court said that the right was clearly established by the consensus of persuasive authority from other circuits. What I'm asking you is, do you think the district court was wrong about the consensus of authority? Now, are you arguing that we should affirm on alternative grounds? I'm not saying that the district court was wrong. I'm just arguing alternative theories. You are. All right, now. I think either or. It could be a consensus or it could be the grant factors. Yes, ma'am, exactly. Okay. Which I think a smart lawyer does. Not saying that I'm a smart lawyer, but I think that it's, you know. You didn't argue what the district court had found in your brief, so I was a bit confused. And if you're arguing the alternate grounds, why don't you tell us, because although this was a split-second decision on Officer Welling's part and the conduct that Will L., you know, his step, however you categorize it, threatening, non-threatening, or ambiguously threatening, why don't you tell us why that fits within the existing precedent or the existing consensus or what factor it is that precludes Officer Welling from getting qualified amenity? If you look at Casella, Casella was the Supreme Court case that most recently just came out. But at the time that all of this happened, I believe that Green versus the New Jersey State Police was the case law that basically said that police officers are not entitled to exert unreasonable force upon a party that is not threatening either the police officer or a third party. So that was in 2009. That was prior to – But that's an unreported case, right? Green's not reported, is it? I believe it is reported. I don't think it is. I mean, the issue is this. You've got to define the right at some level of specificity. And the real challenge I think that you face is that you've got some components of the right, some contours of the right that are defined as of July 2, 2013. But the component that I'm not clear that you have is well-defined as of that date, is whether there's an investigatory stop for a minor defense, and then whether or not one or two steps could justify that conduct towards the officer, could justify that conduct by the officer without respect to whether the officer determined or whether it was objectively determined by a jury that the conduct was threatening or not. So I think the ingredient that you're missing from the clearly established part is this threatening, non-threatening part, at least as of July 2, 2013. And so what you don't have, as far as I can tell from your cases, is that one or two steps plus the addition of non-threatening was clearly established. And so the question is, at that time, was one or two steps enough to say, well, look, that wasn't clearly established? It's my understanding, based on what I reviewed in the video, that the step was just one step forward. It wasn't a step towards a police officer. It wasn't a step in a threatening manner. I mean, isn't that a fact that should be determined by a jury? Well, my question is, when does the non-threatening part of clearly established law come in? Just to put a really, really fine point on it, when do we say that the one or two steps have to be added in the definition that they're non-threatening? Because I assume that you would need that to avoid appellate jurisdiction to be clearly established before July 2, 2013. So all you need is a case that says, yeah, one or two steps, but they have to be non-threatening steps. I mean, if I'm looking at the factors in Sherrard, it says that there are four factors. The duration of the officer's actions, whether the actions take place in the context of effecting arrest, the possibility the suspect may be armed, the number of persons the officer must contend with at one time, the application of force, the relationship between the need and the application of force, the extent of the injury inflicted, the extent of the threat, and this is the point that I think what I see as existing, the extent of the threat of the safety of staffs and inmates, albeit this was in a prison setting, but if they're talking about to what extent did that one step create a threat to the police officers who were nearby, then Sherrard versus Helsing, 128 Federal Third Circuit Opinion, 810, existed in 1997. So to the extent that Will L. took one step, if he didn't present a threat to either of the officers, that was clearly established, and he was not entitled to excessive force. As a matter of fact, there shouldn't have been any force. What should have he done? What should the officer have done when Will L. stands up? It's the third time one of the two stood up. He stood up, moved towards Welling and Kasuda. What should the officer have done there? In this particular instance, and I'm glad you asked that question, Kasuda had not told any of the officers that any of the defendants had to sit down. As a matter of fact, when Will L. had arrived at that location where he initially emptied his pockets voluntarily because he wanted to show Kasuda that he didn't have any drugs on him, they both sat down. They weren't ordered to sit down. Kasuda hadn't told Welling or Warnock to make sure that they were seated, and obviously they were compliant. This interaction wasn't limited to three seconds. This interaction took place over a 20-minute period of time. Bayshod was told to sit down twice while the other officers were there. Both individuals were compliant. You saw Frank Welling placing on gloves as Will was gesturing. Now, I mean, does he not have the ability to gesture and say that he's being harassed? The question is, to the extent did his actions present a threat to any of the officers that were present? That's the question. And if the judge said that that one step was in a nonthreatening manner, so does this court then intersect its own opinion and countermand what Judge Fisher said and remove the jury from the ability to discern whether, in fact, that is a material question? Because it's my understanding that there must be an established law and there must also be questions of a material fact. That is a material fact that goes to the essence of our complaint. All right. Unless there's any other questions? I have one other question, counsel, if I could. Sure. I asked Ms. Koren this question, but I think it's an important one. Does the district court's definition of the right, which we know calls Will's one or two small steps nonthreatening, does that necessarily undermine the disorderly conduct conviction? Hello? Mr. Hollis, did you hear? Yeah, I'm here. Could I respond to it? Yeah. No, it doesn't. Keck says that although there may have been an initial determination by the previous court, unless the fourth amendment, excuse me, the reviewing fourth amendment court, if that judgment comes down that there was, in fact, excessive force, it doesn't undermine the criminal conduct. So, in essence, Will L. could truly be guilty of disorderly conduct, for what we don't know, but he could be, right? But that doesn't mean that Officer Wellings grabbing him around the neck and pushing him against the wall wasn't unreasonable, given the circumstances that existed at that time. And that's the point that I'm trying to make. That determination cannot be made by this panel. It has to be made by a jury. So, even if he was convicted of DC, which I find that also very incredible, because Steven Zapala issued a letter that said he saw the video, and based upon his viewing of the video, that neither one of the FOEs should be charged. Excuse me, Will L. shouldn't be charged at all, and I believe he said that based on L. should be charged with disorderly conduct. So, it was only after Lieutenant Kasuda got that inter-office memo that she asked for a special meeting with high-ranking members of the police force and Steven Zapala, and she essentially got these young men charged. And by charging them, she believed that she was insulating herself from culpability, which is why we're here now. So, going back to HECS, even if there's a determination made that Welling is not entitled to qualified immunity, that doesn't disturb the initial decision that Will L. may have been disorderly, because the standard is, was Welling's actions reasonable under the circumstances to an effectuating arrest? And furthermore, until he slammed Will L. against the ground, there were no arrests made. There were no arrests. They had done nothing. They were walking from a corner store. They were going home. Kasuda sat at the opposite end of the street, based upon information that she had gotten from an officer that this store sold. Okay, you know what? I'm going to cut you off now because you're at time. I think that your answer is now diverging from the question which related to HECS. I got the question. Unless there's any other questions from the panel, we'll invite Ms. Korn back to the phone for three minutes. Hello? Everyone can hear me? Okay. First, I just want to mention that it's not that Will L. could be committing disorderly conduct. He was convicted, and the conviction is undisturbed. He was convicted for creating a hazardous condition or a physically offensive condition. If then the court wants to say that we are not, or an officer is not allowed to use force in that situation, I mean, those two things would contradict each other, so I think there is a possibility that HECS bars this claim altogether. Secondly, when it comes to – Counsel, the issue isn't force. The issue is excessive force. I mean, we probably wouldn't be here if he had – if Officer Welling had tapped him on the shoulder and said, just calm down, sit down, and, you know, we need to regain our composure here. You know, if he pushed him down or something a little bit. But the question here is excessive force, so that's a different matter. Yeah, and to go to that point, you're absolutely right. There was a question, what should Welling have done? And because we don't have an immediate, obvious answer to that, we know that that right is not clearly established. We know that he did not have a clearly established path that he should have followed, which means he should be afforded qualified immunity. None of the cases that the district court relied on used the word threatening or non-threatening, so they do not squarely govern the facts at issue. And the only case from the Third Circuit is Santini v. Fuentes, where there is a plaintiff who had claimed he had the right to be free from force, including pepper spray, strikes, and nightsticks, who unintentionally failed to comply and resisted. So that's the closest that we have here, and that wasn't even clearly established until 2018. So going all the way back to 2013, where we have a person who, even if we want to say, was acting non-threatening but committing disorderly conduct, creating a hazardous condition or physically offensive condition. Counselor? Yes. What do we do with the district court's recitation and the consensus of cases we found in L.R. and in fields that a consensus of persuasive authority in the courts of appeals can clearly establish a right, and that the district court cites four circuit court cases to stand for the proposition that force is not justified against a non-violent person who doesn't flee or resist arrest, who poses little or no threat to the officer, who is not under arrest, and has maybe been stopped for a minor violation? What do we do with those four circuit court cases that state that this kind of person has a right to be free from an officer's use of force? Well, two of them, Smith v. City of Troy and Hank v. Rogers, can be immediately disregarded because they were decided in 2017, which is years after the fact of this issue, which was in 2013. And weren't they based on cases that had been decided before 2013? They were citing those cases, but factually the cases that they rely on are very factually different than these cases. For example, Smith v. Troy is based on Shreve v. Jessamine, which is a case where a plaintiff was pepper sprayed and hit after being incapacitated, which is not what we have here. Hank v. Rogers is a case where someone was ordered to kneel, and there was overwhelming force used within one second, which is, again, not what we have here. We have at least three times on video the officers pointing at the ground, so that doesn't even include the oral instructions to actually sit down. So really, even the cases that they rely on are not applicable here. How about the gram factors? Here we know these people weren't armed. We know they weren't arrested. We know they were nonviolent. They had not the severity of their crime. They had committed no crime. Why aren't the gram factors and the sheriff factors enough to put them on notice? They're not specific enough, and the analysis between gram factors and qualified immunity are separate and distinct for this specific – well, this is one of the specific reasons that they are distinct. The gram factors inform your decision on it, but unless there is case law that squarely governs the alleged right at issue, the officers are entitled to qualified immunity, and the fact that we have so many questions about whether or not this right was clearly established or what the alternatively willing could have done shows that this was clearly not clearly established and he should be entitled to qualified immunity. Again, the only case that indicates to us that this type of issue was ever considered in the Third Circuit is Santini, and it works in favor of granting qualified immunity, because even if the right was clearly established in one case, which really isn't what the standard of clearly established is, Santini wouldn't have even established it until 2018, which is years after 2013 when this incident happened. And I do just want to mention that the city is not a party, and the city is not under a consent decree, so that's just off topic, but I wanted to make sure that the court knew that. Do you want to say anything about the 1983 claim against Lieutenant Kishida? Do you want to say anything about that? I think it's established by the video that she did not have an opportunity to intervene. The two cases that the court relied on are not factually similar enough to make the right at issue clearly established. Smith v. Mensinger is an HMM claim revolving around a 45-minute assault. Garback is one case which would not clearly establish a right at issue. There's no facts in the published case, but it appears to be about two troopers that chased an individual through a wooded area, and they don't know who used the force. So the facts are very different in both of those, because in one singular case that's unpublished is not enough to make it a clearly established right. There's absolutely nothing in our record that suggests that Lieutenant Kishida knew Welling was about to use force or excessive force. If you observe the video closely at the time Officer Welling uses force, it doesn't appear that Lieutenant Kishida is looking at either Will L. or Officer Welling, which further illustrates the point that there would not have been an opportunity or time for her to intervene, which is required to establish a claim for failure to intervene. So that particular claim could be overturned on two different grounds. Number one, that factually it's not established by the plaintiff, and number two, that she should be granted qualified immunity. Okay. Unless there's any other questions from the panel members, you're at time, Ms. Korn. Thank you.   Thank you.